**CASE NO. 26-40071**

# In the United States Court of Appeals For the Fifth Circuit

PAMELA RIGGINS, INDIVIDUALLY, AND ON
BEHALF OF THE ESTATE OF HAYWOOD RIGGINS;
MELYNDA RIGGINS; BRANDON RIGGINS;
KIRSTIE RIGGINS,
**PLAINTIFFS - APPELLEES**

v.

CORPORAL GARCIA; MICHAEL LEHMAN,
OFFICER; REECE MILLER, OFFICER; MAX
MOORE, CORPORAL,
**DEFENDANTS - APPELLANTS**

## APPELLANTS' BRIEF

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION
CIVIL ACTION NO.
4:25-cv-00592-ALM
HON. AMOS L. MAZZANT,
JUDGE PRESIDING

DAVID IGLESIAS
ALEXIS WINTER SMITH
ZACHARY T. SMITH
ARRON P. SWINK
IGLESIAS, PLLC
501 SHELLEY DRIVE, SUITE 125, TYLER, TEXAS 75701
TELEPHONE: 903.944.7185
FACSIMILE: 903.630.5338

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case as described in the fourth sentence of Fifth Circuit Rule 28.2.1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. **Plaintiffs-Appellees**
    Pamela Riggins, Individually, and on behalf of the Estate of Haywood Riggins
    Melynda Riggins
    Brandon Riggins
    Kirstie Riggins
        *Plaintiffs-Appellees*

2. **Counsel for Plaintiff-Appellees**
    James P. Roberts
    Breanta Boss
        PALMER PERLSTEIN
        Addison, Texas

3. **Defendants-Appellants**
    Corporal Garcia
        *Defendant - Appellant*

    Michael Lehman, Officer
        *Defendant – Appellant*

    Reece Miller, Officer
        *Defendant - Appellant*

    Max Moore, Corporal
        *Defendant - Appellant*

4. **Risk Pool for Defendants-Appellants**
    Texas Association of Counties

4. **Counsel Pool for Defendants-Appellants**

David Iglesias
Alexis Winter Smith
Zachary T. Smith
IGLESIAS, PLLC
Tyler, Texas
*Counsel For Defendants-Appellants Corporal Garcia; Michael Lehman, Officer; Reece Miller, Officer; Max Moore, Corporal*

/s/Alexis Winter Smith
Attorney of Record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellants respectfully suggest that oral argument would significantly aid the Court's decisional process in this case.

# TABLE OF CONTENTS

**STATEMENT OF JURISDICTION**....................................................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**................................2

ISSUE NO. 1: The Jailers are entitled to qualified immunity from Appellees' claims because Appellees failed to allege that the Jailers knew of – but disregarded – a substantial risk that Mr. Riggins was in serious medical need.................................2

ISSUE NO. 2: The Jailers are entitled to qualified immunity from Appellees' claims because the failure to give Mr. Riggins medical treatment during his incarceration did not violate his constitutional rights....................................................................2

ISSUE NO. 3: The Jailers are entitled to qualified immunity from Appellees' claims because not all reasonable jailers in their positions would believe that their actions violated Mr. Riggins's constitutional rights ............................................................3

**STATEMENT OF THE CASE**..........................................................................3

a. Course of Proceedings Below.........................................................................3

b. Statement of the Facts....................................................................................4

i. Mr. Riggins tells the Jailers that he does not have any substance dependencies ..........................................................................................4

ii. Upon noticing possible signs of alcohol withdrawal, the Jail puts Mr. Riggins under constant supervision...............................................5

iii. Jail staff immediately perform life-saving measures upon finding Mr. Riggins unresponsive ...................................................................6

**SUMMARY OF THE ARGUMENT** .................................................................7

**ARGUMENT AND AUTHORITIES**...................................................................9

i. Standard of Review .........................................................................................9

ISSUE NO. 1: The Jailers are entitled to qualified immunity from Appellees' claims because Appellees failed to allege that the Jailers knew of – but disregarded – a substantial risk that Mr. Riggins was in serious medical need ................................10

a. The Deliberate Indifference Standard ......................................................10

b. *Rombach v. Culpepper* shows that the Jailers are entitled to qualified immunity ....................................................................................................14

c. Pursuant to this Court's holding in *Rombach*, the Jailers are entitled to qualified immunity from Appellees' claims ................................................15

ISSUE NO. 2: The Jailers are entitled to qualified immunity from Appellees' claims because the failure to give Mr. Riggins medical treatment during his incarceration did not violate his constitutional rights ....................................................21

ISSUE NO. 3: The Jailers are entitled to qualified immunity from Appellees' claims because not all reasonable jailers in their positions would believe that their actions violated Mr. Riggins's constitutional rights ...........................................................23

**CONCLUSION** ....................................................................................32

**CERTIFICATE OF SERVICE** ..........................................................................34

**CERTIFICATE OF COMPLIANCE** ..................................................................34

# TABLE OF AUTHORITIES

**Cases**


*Ashcroft v. al-Kidd,*
563 U.S. 731, 741, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ....25, 26

*Ashcroft v. Iqbal,*
566 U.S. 662, 663, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........... ....................................................9, 10, 11

*Arebalo v. Swisher Cnty.,*
No. 2:13cv082-J, 2013 WL 4475606, at *2 (N.D. Tex. Aug. 21, 2013) ......14

*Banuelos v. McFarland,*
41 F.3d 232, 235 (5th Cir. 1995) ............................................13, 14

*Baker v. McCollan,*
443 U.S. 137, 145, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979) ....................10, 11

*Baldwin v. Dorsey,*
964 F.3d 320, 326 (5th Cir. 2020) ..............................................12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................10

*Betts v. Brennan,*
22 F.4th 577, 582 (5th Cir. 2022) ..............................................2

*Brauner v. Coody,*
793 F.3d 493, 497 (5th Cir. 2015) ..............................................31

*Brewster v. Dretke,*
587 F.3d 764, 770 (5th Cir. 2009) ..............................................12

*Brosseau v. Haugen,*
543 U.S. 194, 201, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam) ..... ....................................................25

*Carswell v. Camp,*
37 F.4th 1062, 1067 (5th Cir. 2022) ..............................................24

*Cass v. City of Abilene, Tex.,*
814 F.3d 721, 729 (5th Cir. 2016) ....................................................................14

*City & Cnty. of San Francisco v. Sheehan,*
575 U.S. 600, 613 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) ......................26

*Club Retro, L.L.C. v. Hilton,*
568 F.3d 181, 194, 206 (5th Cir. 2009) ...................................................2, 7, 8

*Colson v. Grohman,*
174 F.3d 498, 504 n. 2 (5th Cir. 1999) ..........................................................10

*Converse v. City of Kemah,*
961 F.3d 774, 775 (5th Cir. 2020) ..................................................................11

*Cope v. Cogdill,*
3 F.4th 198, 204, 205 (5th Cir. 2021), *cert. denied*, ___U.S.___, 142 S. Ct. 2573, 213 L. Ed. 2d 1123 (2022) ....................................................25, 26, 31

*County of Sacramento v. Lewis*,
523 U.S. 833, 849, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998) ....................13

*Cowart v. Erwin,*
837 F.3d 444, 454 (5th Cir. 2016) ...........................................................2, 24

*de la Paz v. Coy*,
786 F.3d 367, 371 (5th Cir. 2015) ....................................................................9

*District of Columbia v. Wesby,*
583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) ..........................28

*Dorsey v. Portfolio Equities, Inc.,*
540 F.3d 333, 338 (5th Cir. 2008) ....................................................................9

*Duffie v. Wichita Cnty.,*
990 F. Supp. 2d 695, 710 (N.D. Tex. 2013) ..................................................10

*Dyer v. Houston,*
964 F.3d 374, 380, 381 (5th Cir. 2020) ........................................2, 13, 20, 22

*Edmiston v. Borrego*,
75 F.4th 551, 559 (5th Cir. 2023) ....................................................................11

*Estate of Henson v. Wichita Cnty.*,
795 F.3d 456, 462, 464 (5th Cir. 2015) ..................................................11, 12

*Farmer v. Brennan*,
511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) .........12, 13, 29

*Flores v. City of Palacios*,
381 F.3d 391, 404 (5th Cir. 2004) ..........................................................10, 11

*Ford v. Anderson Cnty., Texas*,
102 F.4th 292, 314 (5th Cir. 2024) ..............................................................16

*Garza v. City of Donna*,
922 F.3d 626, 632 (5th Cir. 2019) ................................................................12

*Gobert v. Caldwell*,
463 F.3d 339, 346 (5th Cir. 2006) ..............................................12, 13, 18, 29

*Gonzalez v. Kay*,
577 F.3d 600, 603 (5th Cir.2009) ..................................................................10

*Graham v. Connor*,
490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)...............14

*Hare v. City of Corinth*,
74 F.3d 633, 638-39, 642, 645 (5th Cir. 1996) (en banc) ...........11, 12, 18, 23

*Heinze v. Tesco Corp.*,
971 F.3d 475, 479 (5th Cir. 2020) ................................................................10

*Hope v. Pelzer*,
536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002) ......................32

*Hyatt v. Thomas*,
843 F.3d at 177, 178, 179 (5th Cir. 2016) ............................12, 13, 16, 22, 29

*Jacobs v. W. Feliciana Sheriff's Dep't,*
228 F.3d 388, 395 (5th Cir. 2000) ............................................................12

*Joseph ex rel. Estate of Joseph v. Bartlett,*
981 F.3d 319, 345 (5th Cir. 2020) ......................................................25, 26

*Kingsley v. Hendrickson*,
576 U.S. 389, 396, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015) ..........13

*Kisela v. Hughes,*
___U.S.___, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (per curiam)
..............................................................................................26, 27, 28

*Malley v. Briggs,*
475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ......................27

*Melton v. Phillips,*
875 F.3d 256, 261 (5th Cir. 2017) ............................................................24

*Migra v. Warren City Sch. Dist. Bd. of Educ.,*
465 U.S. 75, 82, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) ..............................10

*Mitchell v. Forsyth,*
472 U.S. 511, 526, 530, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ..........1, 24

*Morgan v. Swanson,*
659 F.3d 359, 372 (5th Cir. 2011) ......................................................27, 28

*Morrow v. Meachum,*
917 F.3d, 870, 874, 875, 876 (5th Cir. 2019) ..............................24, 25, 26, 27

*Mullenix v. Luna,*
577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam). ......26

*Murphy v. Kellar*,
950 F.2d 290, 292 (5th Cir. 1992) ...............................................................11

*Pasco ex rel. Pasco v. Knoblauch,*
566 F.3d 572, 582 (5th Cir. 2009) ......................................................26, 27

*Pearson v. Callahan,*
555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). ...............24, 25

*Piotrowski v. City of Houston,*
51 F.3d 512, 514 (5th Cir. 1995) ..................................................................9

*Plotkin v. IP Axess Inc.,*
407 F.3d 690, 696 (5th Cir.2005) ..........................................................10, 20

*Poole v. City of Shreveport,*
691 F.3d 624, 630 (5th Cir. 2012) .........................................................14, 23

*Rombach v. Culpepper,*
No. 20-30554, 2021 WL 2944809, at *1, *5–7 (5th Cir. July 13, 2021).......... ...........................................................................................14, 15, 17, 30, 31

*Sanders-Burns v. City of Plano,*
594 F.3d 366, 372 (5th Cir. 2010) ................................................................9

*Shine v. Jones,*
743 Fed. Appx. 566, 567 (5th Cir. 2018) .......................................................9

*Sims v. Griffin,*
35 F.4th 945, 951 (5th Cir. 2022)...............................................................16

*Thompson v. Steele,*
709 F.2d 381, 382 (5th Cir. 1983) ..............................................................14

*Thompson v. Upshur Cnty., Tex.,*
245 F.3d 447, 452-54, 457 (5th Cir. 2001) ..................................3, 20, 21, 31

*Vann v. City of Southaven, Miss.,*
884 F.3d 307, 309 (5th Cir. 2018) ..............................................................25

*Varnado v. Lynaugh,*
920 F.2d 320, 321 (5th Cir. 1991) ..............................................................11

*Vincent v. City of Sulphur,*
805 F.3d 543, 547 (5th Cir. 2015) ..............................................................27

*Waganfeald v. Gusman,*
674 F.3d 475, 483 (5th Cir. 2012) ........................................................2, 24

**Rules**

FED. R. APP. P. 32 ..............................................................................................34

FED. R. CIV. P. 12(b)(6) ..........................................................................................9

**Statutes**

42 U.S.C. § 1983 ........................................................ 4, 10, 11, 14, 18, 22, 24, 25

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this appeal because Ms. Garcia, Mr. Lehman, Mr. Miller and Mr. Moore (hereinafter sometimes referred to collectively as "the Jailers") are appealing an order denying their assertions of qualified immunity. (ROA.250, 256.) *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). On January 21, 2026, the district court issued a memorandum opinion and order denying the Jailers' motion to dismiss. (ROA.244-259.) The Jailers filed their timely notice of appeal on February 4, 2026. (ROA.260-262.)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**ISSUE NO. 1: The Jailers are entitled to qualified immunity from Appellees' claims because Appellees failed to allege that the Jailers knew of – but disregarded – a substantial risk that Mr. Riggins was in serious medical need.**

Public officials enjoy qualified immunity from suit unless a plaintiff can show that the officials violated the plaintiff's constitutional rights. *See*, *e.g.*, *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (quoting *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012)); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022); *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). Appellees' pleadings in this case fail to allege that the Jailers knew of a substantial risk that Mr. Riggins was in serious medical need but disregarded that risk. Therefore, the district court erred in denying their motion to dismiss on the issue of qualified immunity.

**ISSUE NO. 2: The Jailers are entitled to qualified immunity from Appellees' claims because the failure to give Mr. Riggins medical treatment during his incarceration did not violate his constitutional rights.**

Plaintiffs have the burden of pleading facts which, if true, would show that their constitutional rights were violated. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Under these circumstances, Mr. Riggins did not have a constitutional right to receive medical treatment when the Jailers did not observe any overt signs of a serious medical need. Therefore, the district court erred in denying their motion to dismiss on the issue of qualified immunity.

**ISSUE NO. 3: The Jailers are entitled to qualified immunity from Appellees' claims because not all reasonable jailers in their positions would believe that their actions violated Mr. Riggins's constitutional rights.**

An officer is entitled to qualified immunity "unless *all* reasonable officials in the defendant's circumstances would have known that the defendant's conduct violated the United States Constitution." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original). The facts pleaded in Appellees' complaint – which indicate minimal symptoms known by any individual Defendant – show that not all jailers in the Appellants' positions would have believed that their actions would have violated Mr. Riggins's constitutional rights. Even if Mr. Riggins's constitutional rights were violated, the Jailers are entitled to qualified immunity from Appellees' claims.

## STATEMENT OF THE CASE

### a. Course of Proceedings Below

The Appellees initiated the underlying litigation by filing their original complaint in the United States District Court for the Eastern District of Texas, Sherman Division, on June 3, 2025. (ROA.14-56.) The Jailers and Grayson County filed their motion to dismiss on August 19, 2025, in which they argued that Appellees failed to carry their burden of alleging facts that would overcome their qualified immunity. (Doc #16.)

On January 21, 2026, the district court issued a memorandum opinion and order denying Defendants' motion to dismiss. (ROA.244-259.) The Jailers filed their timely notice of appeal on February 4, 2026. (ROA.260-262.)

**b. Statement of the Facts**

Haywood Riggins was pronounced deceased in the Grayson County Jail on June 5, 2023. Although Mr. Riggins's death is indisputably tragic, Appellees' allegations in their original complaint clearly show that Ms. Garcia, Mr. Lehman, Mr. Miller, and Mr. Moore cannot be held liable for these sad events pursuant to 42 U.S.C. § 1983. Therefore, the district court erred in denying the Jailers' motion to dismiss.

**i. Mr. Riggins tells the Jailers that he does not have any substance dependencies.**

On June 2, 2023, Haywood Riggins was arrested for driving while intoxicated in Denison, Texas. (ROA.20.) At approximately 7:50 a.m., he was taken to the Texoma Medical Center for a blood draw. (ROA.20.) While at the medical center, Mr. Riggins was cleared and certified by medical professionals to be fit for confinement. (ROA.20.)

Upon arriving at the Grayson County Jail after being medically cleared, the booking officer at the Jail asked Mr. Riggins a series of questions, including, "do you have a history of drug/alcohol abuse?," "are you addicted to any drug or alcohol?," "are you presently suffering from withdrawals?," and "do you expect to

have withdrawal symptoms?" (Doc #16-1.) Mr. Riggins denied ever having a history of alcohol or drug abuse, addiction, or present symptoms of withdrawals. (Doc #16-1.)

**ii. Upon noticing possible signs of alcohol withdrawal, the Jail puts Mr. Riggins under constant supervision.**

In the early hours of June 3, 2025, Medical Officer Grisolia called Mr. Riggins's wife to determine if he had any existing medical issues because she noticed that he had been shaking. (ROA.22.) Mrs. Riggins informed Officer Grisolia at that time that Mr. Riggins drank alcohol frequently prior to his incarceration. (ROA.22.) Upon learning this information, medical staff began performing consistent checks on Mr. Riggins. (ROA.26.) Medical Officer Tyler Lelio documented that "throughout the night [Mr. Riggins] was unstable and continued to try and move around... Better this AM." (ROA.26.) (Doc #16-2)

The following day, on June 4, 2026, Mrs. Riggins called the Jail to check on Mr. Riggins. Corporal Matt Moore spoke with Ms. Riggins and informed her that Mr. Riggins had soiled himself twice that day. Mrs. Riggins told Corporal Moore that Mr. Riggins did not have a history of incontinence. (ROA.22.)

Out of an abundance of caution, the jail ultimately chose to move Mr. Riggins to an individual observation cell on June 5, 2023, after determining that continuous observation was the wisest course of action. (ROA.20-21.) At this time, the Jail cumulatively had knowledge of only Mr. Riggins's restlessness, some shaking, and

incontinence[1]. No individual defendant knew of more than one symptom, according to Appellees' well-pleaded allegations.

Specifically, Appellees allege that Medical Officer Lelio noted on June 3, 2023, that Mr. Riggins had "episodes of shaking and confusion . . . ." (ROA.26.) On June 4, 2023, Appellees allege that Corporal Matt Moore of the Grayson County Jail informed Mr. Riggins's wife that he had soiled himself twice that day. (ROA.22.) These issues comprise the full extent of the symptoms reported from jailers and medical personnel who directly interacted with Mr. Riggins until he was found unresponsive. Appellees do not allege any reports of hallucination, vomiting, fever, agitation, or other symptoms commonly associated with delirium tremens.

**iii. Jail staff immediately perform life-saving measures upon finding Mr. Riggins unresponsive.**

At approximately 4:57 a.m. on June 5, 2023, Officer Lehman and Officer Miller provided breakfast to inmates in Mr. Riggins's housing area. (ROA.24.) Mr. Riggins made a verbal response to receiving the meal tray while he was stationed on the latrine. (ROA.24.)

[1] Appellees' Complaint also indicates that Medical Officer Grisolia made a note on Mr. Riggins's booking sheet at or around the time she spoke with Mrs. Riggins on June 3, 2023, that states "Severe alcoholic" and "Last known meal 5PM on Sunday." (ROA.22.) However, in reviewing the actual document, there is no indication that Medical Officer Grisolia made that note prior to Mr. Riggins's passing. (Doc #16-1) Furthermore, it is illogical to conclude that it was made on Saturday, June 3, 2023, when it references Mr. Riggins's last known meal as being Sunday – the following day. Accordingly, Appellees posit assumptions, rather than well-pleaded facts, with regard to whether anyone employed with the Jail knew that Mr. Riggins had been eating prior to being found unresponsive. (Doc #16-1.)

Corporal Gentry happened to be in the booking area where Mr. Riggins was housed at approximately 5:34 a.m. (ROA.25.) Upon noticing that a person seemed motionless on the latrine in Mr. Riggins's holding cell, Corporal Gentry asked what was wrong with him, and an unknown individual responded that he was, "detoxing and having seizures." (ROA.25.) Corporal Gentry told the other officers to open the holding doors to check on Mr. Riggins. (ROA.25.) Upon entering the cell and realizing that Mr. Riggins was unresponsive, Corporal Gentry immediately called for medical assistance. (ROA.25.) Officer Farley, Officer Lehman, and Medical Officer Lelio removed Mr. Riggins from the latrine, and Medical Officer Lelio immediately began chest compressions. (ROA.25.)

It is unclear from Appellees Original Complaint precisely when emergency medical services arrived, but upon arriving, Sherman Fire/EMS took over lifesaving measures. (ROA.26.) Despite the efforts of Grayson County Jail staff, Grayson County medical personnel, and Sherman Fire/EMS, Mr. Riggins was pronounced deceased at 6:03 a.m. on June 5, 2023. (ROA.26.)

## **SUMMARY OF THE ARGUMENT**

"When a defendant invokes the defense of qualified immunity, the burden shifts to the Appellees to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). A plaintiff must allege

facts which, if true, would show that his constitutional rights were violated. *Id*. at 206.

Here, the Appellees failed to carry their burden of alleging that Mr. Riggins's constitutional rights were violated. Because Appellees' allegations, even if true, do not amount to a constitutional violation, the district court erred in denying the Jailers' motion to dismiss.

Even if Appellees had adequately alleged a constitutional violation, however, Corporal Garcia, Officer Michael Lehman, Officer Miller, and Officer Max Moore would still be entitled to qualified immunity from their claims. First, not all reasonable jailers in the Appellants' positions would have believed that they would violate Mr. Riggins's constitutional rights by placing Mr. Riggins under continuous supervision after he displayed minimal alcohol withdrawal symptoms. Further, it is not – and should not be – clearly established that a jailer violates an inmate's constitutional rights by not providing the inmate with medical care when that inmate is under continuous supervision and demonstrates only minimal observable signs of distress. Therefore, the district court erred in denying the Jailers' motion to dismiss on the issue of qualified immunity.

## ARGUMENT AND AUTHORITIES

### *i. Standard of Review*

"This court reviews *de novo* denials of qualified immunity." *de la Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must decide whether the facts alleged in the complaint, if true, would plausibly entitle the plaintiff to some legal remedy. *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a 12(b)(6) motion to dismiss, the court generally may rely on the plaintiff's complaint and any proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, reviewing them in the light most favorable to the plaintiff. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995)). However, the court need not accept as true any legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. 1937. "A complaint fails if it 'tenders naked assertion[s] devoid of further factual enhancement.'" *Shine v. Jones*, 743 Fed. Appx. 566, 567 (5th Cir. 2018) (quoting *Iqbal* 556 U.S., at 678).

The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 663, 129 S. Ct. 1937; *see also Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

Furthermore, "[the Court] do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions". *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005). Well-pleaded facts that merely permit an inference of possible misconduct do not show entitlement to relief as required by Rule 8(a)(2). *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695, 710 (N.D. Tex. 2013) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir.2009)).

**ISSUE NO. 1: The Jailers are entitled to qualified immunity from Appellees' claims because Appellees failed to allege that the Jailers knew of – but disregarded – a substantial risk that Mr. Riggins was in serious medical need.**

***a. The Deliberate Indifference Standard***

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)). It is axiomatic that "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Flores v. City of*

*Palacios*, 381 F.3d 391, 404 (5th Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979)). Appellees are responsible for adequately pleading the elements and facts for their federal causes of action under Section 1983 and for showing that relief can be granted by the Federal Court. *Iqbal*, 556 U.S. at 663, 129 S. Ct. 1937.

Importantly, plaintiffs cannot recover for the alleged negligence of a governmental actor. "It is hornbook law that a § 1983 plaintiff must prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference – not the result of mere negligence . . . . The negligent deprivation of life, liberty, or property is not a constitutional violation." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In other words, any constitutional violation must be both *intentional* and *knowing*. "Accordingly, an 'official will not be held liable if he merely should have known of a risk.'" *Edmiston v. Borrego*, 75 F.4th 551, 559 (5th Cir. 2023) (quoting *Converse v. City of Kemah*, 961 F.3d 774, 775 (5th Cir. 2020)).

The state's "exercise of its power to hold detainees and prisoners . . . [for trial] brings with it a responsibility under the U.S. Constitution to tend to essentials of their well-being." *Hare v. City of Corinth*, 74 F.3d 633, 638-39 (5th Cir. 1996) (en banc). "The constitutional rights of a pretrial detainee are found in the procedural

and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015).

The Fourteenth Amendment ensures a pretrial detainees' right to medical care. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (citing *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019)); *Hare*, 74 F.3d at 639. However, an official "violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Estate of Henson*, 795 F.3d at 464 (internal quotation marks and citation omitted).

"Deliberate indifference is an 'extremely high' standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 395 (5th Cir. 2000) ("It is well-settled 'that negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State.") (citing *Hare*, 74 F.3d at 645).

To prove deliberate indifference, the Appellees must show that the Jailers were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that they actually "dr[e]w the inference," and that the Jailers simply "disregard[ed] that risk by failing to take reasonable measures to abate it."

*Hyatt v. Thomas*, 843 F.3d at 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)); *Id*. at 179 (quoting *Gobert*, 463 F.3d at 346). "[E]vidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference." *Hyatt*, 843 F.3d at 177. A plaintiff must also prove that the official actively disregarded the risk. *Id*.

As mentioned above, the Supreme Court has been very clear that any alleged harm, even if objectionable, must go beyond negligence. "'[L]iability for negligently inflicted harm is *categorically beneath* the threshold of constitutional due process.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 396, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998)) (emphasis added); *Hyatt*, 843 F.3d at 178 ("What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability"); *see also Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("deliberate indifference cannot be inferred merely from a negligent *or even a grossly negligent* response to a substantial risk of serious harm.") (emphasis added). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d 339 at 346

(internal citations omitted); *see also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Finally, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). An individual defendant "cannot be liable under § 1983" without being involved in the acts that allegedly violated the plaintiff's rights. *Cass v. City of Abilene, Tex.*, 814 F.3d 721, 729 (5th Cir. 2016).

In addition to personal involvement, courts have held that "[c]laims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time." *Arebalo v. Swisher Cnty.*, No. 2:13cv082-J, 2013 WL 4475606, at *2 (N.D. Tex. Aug. 21, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012)).

***b.* Rombach v. Culpepper *shows that the Jailers are entitled to qualified immunity.***

This Court's July 13, 2021, decision in *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809, at *5–6 (5th Cir. July 13, 2021) (per curiam), is particularly instructive with respect to Appellees' claims in this case. There, this Court unequivocally held that withdrawal alone does not constitute a serious medical need

in every case. *Id.* at *7. In stark contrast to the facts in this case, the inmate in *Rombach* was vomiting, openly refusing food, and specifically requesting medical attention, in addition to being incontinent. *Id.* at *5–6.

During the three days he was incarcerated in the jail, the inmate in *Rombach* specifically told the jail that he "needed to go to the hospital" and would repeatedly "beat on" his cell door, yelling that he was going through withdrawals. *Id.* at *5. Indisputably, jail staff in *Rombach* knew that the inmate was experiencing heroin withdrawals. *Id.* The jail merely provided the inmate with Emetrol, Imodium, and ibuprofen, but did not seek outside medical treatment. *Id.* at *1. The inmate ultimately died. *Id.*

This Court held that the jailers who did not intervene were entitled to qualified immunity because they did not violate clearly established law. *Id.* Rather, the symptoms simply were not severe enough to alert a reasonable jailer that the inmate had a serious medical need such that emergency medical intervention was necessary. *Id.* at *6. Specifically, the lack of more severe symptoms such as hallucinating, obvious seizures, and self-inflicted injuries did not demonstrate that any of the officers reasonably perceived a risk to Rombach's medical needs. *Id.* at *6.

***c. Pursuant to this Court's holding in* Rombach, *the Jailers are entitled to qualified immunity from Appellees' claims.***

Here, the district court erred in denying the Jailers' motion to dismiss because both the facts and the applicable law clearly show that they did not violate Mr.

Riggins's constitutional rights. Appellees' allegations show that the Jailers were not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that they actually "dr[e]w the inference," nor that they "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt*, 843 F.3d at 177.

The allegations in Appellees' complaint affirmatively show that the Jailers were not deliberately indifferent to a substantial risk that Mr. Riggins was in serious medical need. Mr. Riggins's symptoms simply were not severe enough to convey a risk – let alone a substantial risk. In cases where this Court *has* held that a Jailer is not entitled to qualified immunity, the inmate was experiencing obviously devastating symptoms. *See*, *e.g.*, *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022) (qualified immunity not applicable to jailers who ignored an inmate who was simultaneously crying out for help and vomiting a black substance.); *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 314 (5th Cir. 2024) (qualified immunity denied in case where jailers did not provide help to an inmate who was on medical watch for a known fatal condition, crying out for help, and vomiting a dark substance.)

As discussed more fully above, Mr. Riggins was not experiencing severe symptoms. Mr. Riggins denied having current substance dependency and denied the possibility that he could experience withdrawals when he was booked into the Jail.

(Doc #16-1.) Because jail medical staff noticed Mr. Riggins was shaking, however, they called his wife and learned he consistently consumed alcohol prior to his incarceration. (ROA.22.) Upon learning this, jail medical staff began to routinely check on him before moving him to a clear observation cell for constant supervision. (ROA.20-21, 26.)

Unlike the inmate in *Rombach*, Mr. Riggins's symptoms were not severe enough to prompt him to request medical treatment on his own behalf. *Rombach*, 2021 WL 2944809 at *5-6. If Mr. Riggins himself was not aware that he was in medical peril, it would be unreasonable to assume jail staff – who have no medical training – knew of and ignored a risk that Mr. Riggins would die. Furthermore, there is no support in the well-pleaded facts of Appellee's Original Complaint that any of these jailers knew about any more than one symptom at any given time.

For instance, there is no indication Corporal Moore knew about any symptoms beyond Mr. Riggins soiling himself. (ROA.23.) Likewise, Officer Lehman and Officer Miller were on duty in the same area in which Mr. Riggins was being observed on the morning of his death, and they provided his breakfast tray on that date. At the time his breakfast was delivered, Mr. Riggins was ambulatory just prior to stationing himself on the latrine and he responded verbally to officers. (ROA.24.) Corporal Garcia was merely stationed in the same area as Mr. Riggins, but there are

no facts in the Complaint that demonstrate she had any interactions with him whatsoever prior to the moment he was found unresponsive. (ROA.26.)

Accordingly, Appellees ask this Court to hold jailers liable for conduct that does not even rise to the level of ordinary negligence and which would not be actionable in a free-world medical malpractice claim. This Court has roundly rejected applying such standards in § 1983 cases. *See*, *e.g.*, *Hare*, 74 F.3d at 642; *Gobert*, 463 F.3d at 346.

The district court, however, erred by accepting Appellees' conclusory allegations rather than their well-pleaded facts. Specifically, the district court read Appellees' Original Complaint and concluded, "…jail staff, including Moore, knew Mr. Riggins was a severe alcoholic and experiencing Delirium Tremens." (ROA.254.) But that is not what the Complaint shows. The specific paragraphs in Appellees' complaint that the district court referenced in support of this proposition state

> Accordingly, Corporal Moore and the jail staff were on further notice that the symptoms Mr. Riggins was displaying were red flags of needing medical attention, especially since he was known to be a severe alcoholic and was experiencing Delirium Tremens, as noted by both Lelio and Grisolia as early as 6/3/23 at 2:22 AM.
>
> According to the AG Report, Mr. Riggins was already housed in the detox observation cell 3 at this point – so Corporal Moore was aware that in addition to detoxing from alcohol, Mr. Riggins was not using the restroom on himself.

> Despite this, Moore did not provide Mr. Riggins with medical care or attention or take any steps to have Mr. Riggins provided with medical care or attention.

(ROA.25)

These paragraphs provide a passive dialogue that allege that Mr. Riggins was "known to be a severe alcohol and was experiencing delirium tremens" without providing context as to who held that knowledge beyond Lelio and Grisolia. In fact, the only inference of alcoholism or delirium tremens is in a note that nobody, according to Appellee's Complaint, beyond Lelio or Grisolia *actually* knew about. The fact that Mr. Riggins was in an observation cell, coupled with two instances of incontinence, would not alert a lay jailor to conclude life-threatening symptoms of alcohol withdrawal.

Furthermore, the notion that all individually named jailers knew that Mr. Riggins was experiencing seizures is not founded by the well-pleaded facts in Appellee's Complaint. When Corporal Gentry asked what was wrong with Mr. Riggins, an unknown person in the booking area stated that he was, "detoxing and having seizures." The knowledge of one unknown person cannot reasonably be transposed on every officer in or around the booking area at that time.

The district court's order infers that because Officer Lehman, Officer Moore, and Corporal Garcia were in the booking area at that time, they were subjectively aware of these facts. (ROA.36, 249.) However, "[the Court] do[es] not accept as

true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). This inference requires a logical jump with facts that are assumed, instead of existent. Accordingly, these paragraphs present as no more than unwarranted factual inferences that are insufficient to survive a motion to dismiss. Undoubtedly, the jailers could not have actually drawn an inference of harm without actual knowledge of Mr. Riggins's symptoms – including seizures. *Dyer*, 964 F.3d at 380.

The district court further likened this case to *Thompson v. Upshur County*, 245 F.3d 447, 452-54 (5th Cir. 2001). (ROA.255.) Contrary to the district court's holding, however, the facts in *Thompson* compel a finding of qualified immunity in favor of the Jailers. There, an inmate was shaking, sweating profusely, and hallucinating. *Id*. The inmate's condition worsened, and he began to collide with objects in his cell, sometimes falling and striking his head against the window, floor, or concrete bench of his cell. *Id*. at 454. Eventually, the inmate had a seizure, stopped breathing, and died. *Id*. The Defendant jail relied on a medical refusal from the inmate, in which he declined to seek medical treatment, despite his many symptoms. *Id*. at 464. This Court held that the refusal was insufficient in the face

of his many, egregious symptoms. *Id.*[2] Unlike the inmate in *Thompson*, Mr. Riggins was not hallucinating, colliding into concrete objects, or sweating profusely.

Medical officer Lelio may have known that Mr. Riggins was shaking and confused. (ROA.26.) Medical Officer Grisolia may have known that Mr. Riggins had a history of regular alcohol consumption. (ROA.23.) One unknown person inside of the Jail knew that Mr. Riggins was having seizures. (ROA.25.) But these are not facts of which Officer Lehman, Officer Miller, Corporal Garcia, or Corporal Moore had any knowledge, according to the well-pleaded facts in Appellee's Complaint. In reality, the well-pleaded facts demonstrate that these officers did not know of, but disregard, Mr. Riggins's serious medical needs. Appellees attempt to transpose a collective of knowledge on individuals who had little to none independently.

**ISSUE NO. 2: The Jailers are entitled to qualified immunity from Appellees' claims because the failure to give Mr. Riggins medical treatment during his incarceration did not violate his constitutional rights.**

Appellees have failed to allege any facts which would show that Mr. Riggins's constitutional rights were violated by any actions the Jailers took while he was under

[2] The district court held that "[t]he Court is not convinced by Defendants' arguments and Thompson does not support the assertion that it was Mr. Riggins's duty to actively ask for help to ensure his constitutional rights were protected…" (ROA.255.) The Appellants' argument was somewhat different, however. Rather than inferring it was Mr. Riggins's duty to call for help, Appellants point out that Mr. Riggins's symptoms were so slight that even he did not recognize he was in peril. If he was unaware of his own needs and displayed no overt symptoms, then a lay jailer cannot be expected to draw an inference of a serious risk of harm.

continuous supervision or after he was found unresponsive in his cell. At no specific point in time do Appellees point to a moment in which jail staff failed to act when Mr. Riggins was in critical need of help. For instance, if Mr. Riggins had a seizure, Appellees do not point to any instance in which medical or jail personnel did not respond.

To the contrary, Corporal Gentry immediately called for medical help upon noticing Mr. Riggins prone on the latrine. (ROA.26.) Medical personnel immediately arrived and attempted life saving measures until Sherman Fire/EMS arrived and took over resuscitation efforts. (ROA.26.) At no point did any Appellant choose not to act when confronted with these tragic events.

Prior to the moments in which Mr. Riggins was found in his cell, the Jail placed him under continuous observation after perceiving only minimal symptoms because the *medical* officers – not the jailers – were aware that he had a history of frequent alcohol consumption. To be actionable under § 1983, the alleged harm, even if objectionable, must go beyond negligence. *Hyatt*, 843 F.3d at 178 ("What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability"); *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("deliberate indifference cannot be inferred merely from a negligent *or even a grossly negligent* response to a substantial risk of serious harm.") (emphasis added).

As discussed in greater detail above, the Jailers were not aware of a serious risk of harm to Mr. Riggins because no single person was aware of the collective of symptoms that Appellees allege in their Complaint. Even with regard to the medical officers, going back and labeling "shaking" as known and established delirium tremens, as Appellees do, is contrary to reason and the dictates of this very Court. *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) (holding that claims of qualified immunity are judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") Without overt symptoms and not knowing about the symptoms that did exist, even a trained medical professional would be at a disadvantage in discerning the risk of harm to Mr. Riggins. A negligence case under these facts would not even be likely in the free world, but even if it were, this Court's precedent "demonstrate[s] that the constitutional standard of conduct must step up from negligence – that it must be more than mere or even gross negligence." *Hare*, 74 F.3d at 645.

In sum, the district court erred holding that Mr. Riggins's constitutional rights were violated. At most, Appellees allege inactionable negligence. Therefore, Corporal Garcia, Officer Lehman, Officer Miller, and Corporal Moore respectfully request that the Court find that they are entitled to qualified immunity.

**ISSUE NO. 3: The Jailers are entitled to qualified immunity from Appellees' claims because not all reasonable jailers in their positions would believe that their actions violated Mr. Riggins's constitutional rights.**

Section 1983 allows a plaintiff to redress alleged constitutional violations by "seek[ing] money damages from the personal pocket of a law enforcement officer." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "The qualified immunity doctrine makes that task difficult in every case." *Id*.

"A defendant's entitlement to qualified immunity must be determined at the "earliest possible stage of the litigation." *Carswell v. Camp,* 37 F.4th 1062, 1067 (5th Cir. 2022) (quotation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery*." *Id*. at 1067 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)) (emphasis in original). Further, a good-faith assertion of qualified immunity alters the usual burden of proof, shifting it to the plaintiff to show that the defense is not available. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017).

"A public official is entitled to qualified immunity unless the plaintiff can demonstrate that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (quoting *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012)). While it is often appropriate to answer these two questions sequentially, courts may exercise their "sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

"The second question – whether the officer violated clearly established law – is a doozy. The § 1983 plaintiff bears the burden of proof. And the burden is heavy." *Morrow*, 917 F.3d at 874 (citing *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018)) (internal citations omitted).

"A right is clearly established only if relevant precedent 'has placed the constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)) (internal quotation marks, brackets, and punctuation omitted). "The official's subjective motivation is irrelevant to the qualified-immunity defense, except as far as it is relevant to the underlying constitutional claim." *Id.*

"Unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021), *cert. denied*, ___U.S.___, 142 S. Ct. 2573, 213 L. Ed. 2d 1123 (2022) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)) (internal quotation marks omitted). "Generally, to satisfy this standard, the plaintiff must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution and explain why the case

clearly proscribed the conduct of that individual officer." *Id*. at 205 (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)) (internal brackets and punctuation omitted).

This Court has observed that "[t]he pages of the *United States Reports* teem with warnings about the difficulty of placing a question beyond debate." *Morrow*, 917 F.3d at 874. The Court has extracted from these precedents "four applicable commandments" relating to whether a right is clearly established. *Id*.

First, the court must "frame the constitutional question with specificity and granularity." *Id*. at 874-75. Rather than defining clearly established law with a "high level of generality . . . ., the dispositive question is whether the violative nature of the *particular* conduct is clearly established." *Id*. at 875 (quoting *al-Kidd*, 563 U.S. at 742, 131 S. Ct. 2074; *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam)) (emphasis in original) (internal brackets omitted). "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015).

"Second, clearly established law comes from holdings, not dicta." *Morrow*, 917 F.3d at 875. The reason for this is a practical one: "officers are not charged with memorizing every jot and tittle" a court uses to explain a holding. *Id*. at 876. "Third,

overcoming qualified immunity is especially difficult in excessive force cases." *Id*. (quoting *Kisela v. Hughes*, ___U.S.___, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (per curiam); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009)) (emphasis in original).

"The fourth and final commandment is . . . [that courts] must think twice before denying qualified immunity." *Id*. Due to the "importance of qualified immunity to society as a whole," courts are "ill advised to . . . deny qualified immunity to anyone but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

"Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right "clearly" in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established. This is true even when the circuit split developed after the events in question." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

In short, plaintiffs seeking to prove that an officer is not entitled to qualified immunity are "seeking an extraordinary remedy. To get it, they must make an

extraordinary showing." *Id*. They must "identif[y] a controlling precedent that squarely governs the specific facts at issue." *Id*. (quoting *Kisela*, 138 S. Ct. at 1153). The Supreme Court has called it a "demanding standard." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018). It is a standard Appellees cannot meet in this case.

Here, the district court erred by assuming that Mr. Riggins's constitutional rights were violated. As previously discussed, Mr. Riggins told booking officers that he did not have any alcohol or drug dependencies and that he was not at risk for withdrawal. (Doc #16-1.) After learning from Mr. Riggins's wife that this may not be true, however, medical officers proactively checked on him before placing him in an observation cell for constant supervision. (ROA.22, 26.) The most any combination of jail staff knew under Appellees' well-pleaded allegations is that Mr. Riggins was potentially experiencing alcohol withdrawals, he had soiled himself twice, and on at least one occasion, he was experiencing shaking and confusion. (ROA.22-23, 26.)

Furthermore, there is no indication Corporal Moore knew about any symptoms beyond Mr. Riggins soiling himself. (ROA.23.) Likewise, the pleadings do not demonstrate that the remaining jailers knew about any symptoms beyond the fact that an unknown person stated that Mr. Riggins was "detoxing" and experiencing "seizures" at the time he was found unresponsive. (ROA.25.)

Appellees never point to a moment in which jail staff failed to act when Mr. Riggins was in critical need of help. For instance, if Mr. Riggins had a seizure, Appellees do not point to any instance in which medical or jail personnel knew of the incident and did not respond.

Rather, they have elected to sue the individual jailers present on the date of Mr. Riggins's death simply because an unknown person had knowledge that Mr. Riggins was having seizures. That is not how qualified immunity works. Each individual jailer sued must have had *actual* knowledge of a substantial risk of harm. See *Hyatt*, 843 F.3d at 177; *Farmer*, 511 U.S. 837; *Gobert*, 463 F.3d at 346. Without knowledge of the combined symptoms, no jailer could have drawn any inference that Mr. Riggins was in severe medical distress.

In light of the fact that Mr. Riggins was being routinely evaluated by certified, degreed medical professionals, and he had not exhibited serious symptoms of withdrawal that, the jailers did not (1) draw any inference that there was a serious risk to his health; or (2) disregard the risk by failing to take reasonable measures to abate it. Therefore, the jailers could not have drawn an inference that Mr. Riggins would die suddenly after being booked into the jail while under consistent medical supervision.

Even if Mr. Riggins's constitutional rights were violated, however, the relevant Fifth Circuit case law shows that Mr. Riggins's rights were not clearly

established sufficient to deprive the individual Appellants of qualified immunity. On July 13, 2021, the Fifth Circuit in *Rombach*, *supra*, held that qualified immunity applied to officers who interacted with an inmate who repeatedly and forcefully yelled for medical attention while he was experiencing withdrawals and was additionally exhibiting symptoms such as vomiting, incontinence, and malnutrition. *Rombach,* 2021 WL 2944809, at *5. *Rombach* was the clearly established law in this Circuit at the time the events giving rise to this litigation occurred. Consequently, it is beyond argument that Grayson County Jail staff did not violate clearly established law in this case.

This is especially true in light of the facts that: (1) the Defendants placed Mr. Riggins under constant surveillance in an observation cell upon learning Mr. Riggins may be experiencing alcohol withdrawal; (2) the symptoms known by any single jailer were not severe enough to alert a layman with no medical training to the possibility of delirium tremens; and (3) the Defendants immediately called for medical help upon finding Mr. Riggins unresponsive. The Fifth Circuit determined that no constitutional violation occurred in a case where a similarly-situated inmate experienced far more obvious symptoms of alcohol withdrawals. Considering this fact, the individual Appellants in this case are entitled to the defense of qualified immunity.

The district court erred in basing its opinion solely on *Thompson* for two primary reasons. (ROA.255-256.) First, as discussed, *Thompson* is wholly distinguishable because the inmate there experienced far more severe symptoms than Mr. Riggins displayed. *Thompson* 245 F.3d at 452-54. There, an inmate was so physically disturbed by his symptoms that he was colliding with objects in his cell and striking his head against the window, floor, or concrete bench of his cell. *Id*. at 454. The facts of that case are not remotely similar, *even if* Appellees had factually alleged that each officer they elected to sue knew about each and every symptom.

Second, even if the two cases were factually comparable, *Thompson* was decided in 2001, while *Rombach* is a 2021 decision. *Id*; *Rombach*, 2021 WL 2944809, at *5–6. *Rombach* was the law at the time Mr. Riggins was incarcerated in the Grayson County Jail. But even if the cases: (1) were factually similar, *and* (2) there was confusion as to which holding controlled, qualified immunity bridges the gap in stating that the law must be clearly established at the time of the alleged violation to hold the officer liable. *Cope*, 3 F.4th at 204 ("[u]nless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity.").

"To determine that an official is *not* entitled to qualified immunity, the court must find that every reasonable officer would have understood that the alleged conduct violated a clearly established constitutional right." *Brauner v. Coody*, 793

F.3d 493, 497 (5th Cir. 2015) (emphasis in original). Accordingly, it is axiomatic to the doctrine of qualified immunity "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted). In light of the clear and unambiguous holdings of the Fifth Circuit and the Supreme Court, as well as the pleaded facts in this case, it is clear that none of Mr. Riggins's clearly established rights were violated as a result of these events and even clearer that the named Defendants could not have had the requisite knowledge of the extent of Mr. Riggins's health issues. Therefore, Appellants are entitled to qualified immunity.

Accordingly, Appellees allegations fail to overcome either prong of the qualified immunity analysis. Corporal Garcia, Officer Lehman, Miller, and Corporal Moore are therefore entitled to qualified immunity from Appellees claims.

## CONCLUSION

In sum, the evidence in the record shows that the Jailers did not exercise deliberate indifference to a substantial risk that Mr. Riggins was in serious medical need. Although tragic, Mr. Riggins's death did not result from a violation of his constitutional rights.

WHEREFORE, PREMISES CONSIDERED, Appellees Corporal Garcia, Officer Michael Lehman, Officer Miller, and Corporal Max Moore, respectfully request that the Court reverse the judgment of the district court, find that they are

entitled to qualified immunity, and grant them any and all other relief, at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

/s/Alexis Winter Smith

**Alexis Winter Smith**
State Bar No. 24131777
lexi@iglesiaslawfirm.com

**David Iglesias**
Lead Counsel
State Bar No. 24051733
david@iglesiaslawfirm.com

**Zachary T. Smith**
State Bar No. 24140683
zachary@iglesiaslawfirm.com

**IGLESIAS, PLLC**
501 Shelley Drive, Suite 125
Tyler, Texas 75701
Telephone: (903) 944-7185
Facsimile: (903) 630-5338

*Dallas Office:*
1412 Main Street, Suite 608
Dallas, Texas 75202

**COUNSEL FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument was served upon appellees in the above entitled and numbered cause on April 30, 2026, via the court's electronic filing system.

/s/Alexis Winter Smith
Alexis Winter Smith

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2 and .3, the undersigned certifies this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS:

   A. 7,869 words.

2. THE BRIEF HAS BEEN PREPARED

   A. In proportionally spaced typeface using:

   Microsoft Word in Times New Roman 14-point font.

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF

AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

/s/Alexis Winter Smith
Alexis Winter Smith