**Case No. 26-40071**

---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

PAMELA RIGGINS, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF HAYWOOD RIGGINS; MELYNDA RIGGINS; BRANDON RIGGINS; KIRSTIE RIGGINS,

**PLAINTIFFS-APPELLEES**

V.

CORPORAL GARCIA; MICHAEL LEHMAN, OFFICER; REECE MILLER, OFFICER; MAX MOORE, CORPORAL,

**DEFENDANTS-APPELLANTS**

---

On Appeal from the United States District Court for the Eastern District of Texas, Sherman Division Civil Action No. 4:25-cv-00592-ALM

**Appellees' Responsive Brief**

---

**James P. Roberts**
Palmer Perlstein
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: 214-987-4100
Facsimile: 214-922-9900
Email: james@palmerperlstein.com
**Counsel for Appellees**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Pamela Riggins, Individually**, **And on Behalf of the Estate of Haywood Riggins** (Plaintiff/Appellee);

2. **Melynda Riggins** (Plaintiff/Appellee);

3. **Brandon Riggins** (Plaintiff/Appellee);

4. **Kirstie Riggins** (Plaintiff/Appellee);

5. **James Roberts**, Palmer Perlstein, 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellee at trial and on appeal);

6. **Scott Palmer**, Palmer Perlstein 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellee at trial and on appeal);

7. **Corporal Garcia**, (Defendant/Appellant);

8. **Officer Michael Lehman**, (Defendant/Appellant);

9. **Officer Reece Millier,** (Defendant/Appellant);

10. **Corporal Max Moore** (Defendant/Appellant);

11. **David Iglesias**, Iglesias, PLLC, 501 Shelley Drive, Suite 125, Tyler Texas 75701(Attorney for Defendants/Appellants, at trial and on appeal);

12. **Alexis Winter Smith**, Iglesias, PLLC, 501 Shelley Drive, Suite 125, Tyler Texas 75701(Attorney for Defendants/Appellants, at trial and on appeal);

13. **Zachary T. Smith**, Iglesias, PLLC, 501 Shelley Drive, Suite 125, Tyler Texas 75701(Attorney for Defendants/Appellants, at trial and on appeal);

14. **Aaron P**, Iglesias, PLLC, 501 Shelley Drive, Suite 125, Tyler Texas 75701(Attorney for Defendants/Appellants, at trial and on appeal);

15. **The Honorable Amos L. Mazzant** (United States District Court Judge for trial);

*/s/ James P. Roberts*
James P. Roberts

**ATTORNEY OF RECORD FOR APPELLEES PAMELA RIGGINS, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF HAYWOOD RIGGINS; MELYNDA RIGGINS; BRANDON RIGGINS; KIRSTIE RIGGINS.**

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs–Appellees respectfully request oral argument. This appeal presents important questions regarding qualified immunity and deliberate indifference to serious medical needs at the Rule 12(b)(6) stage. Oral argument would assist the Court in evaluating the specific allegations against each Appellant and the application of existing Fifth Circuit precedent to those allegations.

## Table of Contents


**Certificate of Interested Persons** .......... 2

**Statement of Jurisdiction** .......... 9

**Statement of Issues Presented for Review** .......... 10

First Issue: .......... 10

Second Issue: .......... 10

**Statement of the Case** .......... 11

**I. Factual allegations.** .......... 11

**II. Proceedings below.** .......... 15

**Summary of the Argument** .......... 15

**Argument** .......... 18

**I. Standard of review.** .......... 18

**II. Plaintiffs plausibly alleged that Appellants violated Mr. Riggins's Fourteenth Amendment rights.** .......... 18

A. The Complaint alleges an objectively serious medical need. .......... 19

B. Plaintiffs plausibly alleged Appellants' subjective knowledge. .......... 20

*1. Moore.* .......... 20

*2. Lehman.* .......... 21

*3. Miller.* .......... 22

*4. Garcia.* .......... 23

C. Appellants' "collective knowledge" argument fails at the pleading stage. 24

D. Appellants' "monitoring" argument does not defeat deliberate indifference. .......... 25

E. Appellants' "he did not ask for help" argument fails. .......... 26

**III. The law was clearly established.** .......... 26

**IV. Appellants' remaining arguments fail.** .......... 35

A. The initial booking denial of substance dependency does not defeat later knowledge. ....................35
B. The fact that medical care was summoned after Mr. Riggins became unresponsive does not defeat liability for the prior failure to obtain care. ..........35
C. Plaintiffs' allegations are not negligence allegations. ....................36
**CONCLUSION** ....................37
**PRAYER AND CONCLUSION** ....................37
CERTIFICATE OF SERVICE ....................38
CERTIFICATE OF COMPLIANCE ....................38

## Table of Authorities

*Addington v. Bayou Dorcheat Corr. Ctr.*,

No. CV 18-1116, 2022 WL 989343, at *9 (W.D. La. Mar. 31, 2022) .......... 30, 31

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987) .......... 33

*Brosseau v. Haugen*,
543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004 .......... 33

*Brosseau v. Haugen*,
543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) .......... 33

*Carlucci v. Chapa*,
884 F.3d 534, 538 (5th Cir. 2018) .......... 19

*Club Retro LLC v. Hilton*,
568 F.3d 181, 194 (5th Cir. 2009) .......... 18

*Crane v. City of Arlington*,
50 F.4th 453, 467 (5th Cir. 2022) .......... 33

*Domino v. Tex. Dep't of Crim. Just.*,
239 F.3d 752, 755 (5th Cir. 2001) .......... 19, 36

*Dyer v. Houston*,
*964 F.3d 374, 380 (5th Cir. 20* .......... passim

*Farmer v. Brennan*,
511 U.S. 825, 842 (1994) .......... 19

*Fielder v. Bosshard*,
590 F.2d 105, 108 (5th Cir. 1979 .......... passim
*Gobert v. Caldwell*,

463 F.3d 339, 345 n.12 (5th Cir. 2006) ....................................................19

*Hope v. Pelzer*,
536 U.S. 730, 738 (2002).......................................................................... 33, 34

*Jones v. Am. Alternative Ins. Corp.*,
No. CV 21-690, 2022 WL 989346, at *8 (W.D. La. Mar. 31, 2022)...................30

*Mitchell v. Forsyth*,
472 U.S. 511, 530 (1985)................................................................................9

*Montano v. Orange County*,
842 F.3d 865, 869–72, 878–79 (5th Cir. 2016) ........................................... passim

*Pearson v. Callahan*,
555 U.S. 223, 232 (2009)..............................................................................18

*Rombach v. Culpepper*,
No. 20-30554, 2021 WL 2944809 (5th Cir. July 13, 2021) .................... 17, 31, 32

*Roque v. Harvel*,
993 F.3d 325, 335 (5th Cir. 2021.................................................................33

*Thompson v. Upshur County, Texas*,
*245 F.3d 447, 457 (5th Cir. 2001)*................................................................ passim

*United States v. Montano*,
590 F.2d 108, 108 (5th Cir. 1979) .................................................................16

**Statutes**

28 U.S.C. §§ 1331...............................................................................................9
42 U.S.C. § 1983.................................................................................................9

**Rules**

Rule 12(b)(6)......................................................................... 11, 18, 23, 37

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

PAMELA RIGGINS, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF HAYWOOD RIGGINS; MELYNDA RIGGINS; BRANDON RIGGINS; KIRSTIE RIGGINS,

**PLAINTIFFS-APPELLEES**

v.

CORPORAL GARCIA; MICHAEL LEHMAN, OFFICER; REECE MILLER, OFFICER; MAX MOORE, CORPORAL,

**DEFENDANTS-APPELLANTS**

---

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs brought claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. ROA.29-39.

This Court has jurisdiction over Appellants' interlocutory appeal to the extent it presents a purely legal qualified-immunity issue. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). The appeal concerns only Corporal Garcia, Officer Michael Lehman, Officer Reece Miller, and Corporal Max Moore. Grayson County did not appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

FIRST ISSUE: Whether the district court correctly held that Plaintiffs plausibly alleged a Fourteenth Amendment deliberate indifference claim where the Complaint alleges that Appellants knew Mr. Riggins was detoxing from alcohol, knew he was experiencing seizures and incontinence, knew he was deteriorating in an observation cell, and nevertheless failed to obtain medical care.

SECOND ISSUE: Whether the district court correctly held that Plaintiffs plausibly alleged violation of clearly established law because, before June 2023, Fifth Circuit precedent clearly established that jail officials may not ignore obvious symptoms of serious alcohol withdrawal or delirium tremens and fail to summon professional medical care.

## Statement of the Case

### I. **Factual allegations.**

Because this appeal arises from the denial of a Rule 12(b)(6) motion, Plaintiffs' well-pleaded allegations must be accepted as true and viewed in Plaintiffs' favor.

Haywood Riggins was arrested for driving while intoxicated on June 2, 2023. ROA.19-20 ¶¶24–40. Intake at the Grayson County Jail was completed at 9:35 a.m. on June 2, 2023. ROA.20 ¶41. According to the Attorney General's in custody death report, Mr. Riggins was placed in holding cell #3 "under observation for detox." ROA.20 ¶42. The same report states he remained in holding cell #3 until his death on June 5, 2023. ROA.20 ¶43.

The Complaint alleges that jail staff knew Mr. Riggins was experiencing alcohol withdrawal symptoms. ROA.21 ¶47. A Texas Ranger report stated that Mr. Riggins was moved to the booking area for observation after he experienced alcohol-withdrawal symptoms. ROA.21 ¶47. Another inmate, Wesley Cox, stated that Mr. Riggins became confused to the point that it concerned Cox. ROA.21 ¶49. A nurse, alleged on information and belief to be Tyler Lelio, stated that Mr. Riggins was detoxing off alcohol. ROA.21 ¶50.

Mr. Riggins then began shaking to the point that multiple inmates pounded on the glass and screamed that he needed help because they thought he was having a

seizure. ROA.21 ¶51. Plaintiffs allege that Mr. Riggins was having a seizure due to delirium tremens from alcohol withdrawal. ROA.21 ¶52. Plaintiffs further allege that jail staff were aware he was detoxing from alcohol and showing signs and symptoms requiring medical intervention. ROA.21-22 ¶¶53-54.

At 2:22 a.m. on June 3, 2023, Medical Officer Erinn Grisolia left Mrs. Riggins a voicemail asking about Mr. Riggins's medical history. ROA.22 ¶55. Mrs. Riggins called back, and Grisolia told her that Mr. Riggins was "shaking really bad" and asked about his alcohol habits. ROA.22 ¶56. Mrs. Riggins told Grisolia that if Mr. Riggins was awake he was drinking and that he drank whiskey, not beer. ROA.22 ¶57. Grisolia responded that this let them know how to treat Mr. Riggins and that they would keep an eye on him. ROA.22 ¶58. Grisolia wrote notes on Mr. Riggins's booking sheet, including "Severe Alcoholic" and "Last known meal 5PM Sunday." ROA.22 ¶62.

On June 4, 2023, Mrs. Riggins spoke with Corporal Moore. Moore told her that Mr. Riggins had used the restroom in his pants twice that day and asked about his incontinence. ROA.23 ¶64. Mrs. Riggins told Moore that Mr. Riggins had never done that before and did not have a history of incontinence. ROA.23 ¶65. Plaintiffs allege that Moore was aware that Mr. Riggins was housed in the detox observation cell and that, in addition to detoxing from alcohol, he was now using the restroom

on himself. ROA.23 ¶67. Plaintiffs allege that Moore nevertheless did not provide medical care or take steps to have medical care provided. ROA.23 ¶68.

On June 5, 2023, Officer Lehman was working first-floor duties and assigned to first-floor scans. ROA.23 ¶69. Plaintiffs allege this made him responsible for observing Mr. Riggins and ensuring his health and safety. ROA.23 ¶70. At approximately 3:50 a.m., Lehman observed Mr. Riggins remove his orange inmate jumper in holding cell 3 likely due to using the restroom on himself again. ROA.23 ¶71. At approximately 4:57 a.m., Lehman delivered breakfast to the book-in cells. ROA.24 ¶73. Lehman told Officer Miller to open the door to holding cell 3. ROA.24 ¶74. Lehman told Mr. Riggins that his breakfast was there, but Mr. Riggins responded only by mumbling. ROA.24 ¶75. Lehman then had Miller close the door. ROA.24 ¶76.

Plaintiffs allege that Mr. Riggins had not been eating while incarcerated and experiencing alcohol withdrawal and delirium tremens. ROA.24 ¶77. His autopsy showed only 50 mL of brown fluid in his stomach, which Plaintiffs allege was indicative of an empty stomach with no food. ROA.24 ¶78. The medical examiner investigation narrative states that Texas Ranger Heath Peacock described Mr. Riggins as emaciated and having what appeared to be bedsores on his back. ROA.24 ¶79. Plaintiffs allege the bedsores showed Mr. Riggins had been lying on the ground not moving, other than the seizures he was experiencing from delirium

tremens, as prior to being arrested, Mr. Riggins was active and was even on his way to go fishing when he was arrested. ROA.24 ¶80.

At approximately 5:34 a.m., Corporal Gentry asked booking officers what was wrong with the man in holding cell 3. ROA.25 ¶85. Gentry was told that Mr. Riggins was "detoxing and having seizures." ROA.25 ¶86. Plaintiffs allege that the jailers in the booking area were aware Mr. Riggins was experiencing delirium tremens because they knew he was detoxing from alcohol in observation cell 3 and having seizures. ROA.25 ¶87. Plaintiffs specifically allege that the jailers in the booking area who were aware Mr. Riggins was detoxing from alcohol and experiencing delirium tremens by way of seizure and incontinence included Corporal Garcia, Officer Lehman, and Officer Miller. ROA.25 ¶88. Plaintiffs allege that none of them provided medical care or attention or took steps to have medical care provided. ROA.25 ¶89.

At 5:35 a.m., Gentry directed officers to roll the holding-cell door. ROA.25 ¶90. Gentry noticed Mr. Riggins's fingers and told Garcia to get medical "now." ROA.26 ¶91. Mr. Riggins was removed from the toilet and laid on the ground, chest compressions were started, and Sherman Fire/EMS responded. ROA.26 ¶¶92–96. He was pronounced dead at 6:03 a.m. on June 5, 2023. ROA.26 ¶96. The autopsy lists the cause of death as "Complications of chronic alcoholism," and postmortem toxicology was negative for drugs or alcohol. ROA.26 ¶98.

Plaintiffs allege that according to inmate Wesley Cox, the whole holding cell was telling the jailers and nurses to give Mr. Riggins medical help, but instead, they just placed Mr. Riggins the holding cell 3 where he suffered alone until he died. ROA.27 ¶105.

## II. **<u>Proceedings below.</u>**

Plaintiffs brought a § 1983 claim for deliberate indifference to serious medical needs against Appellants Garcia, Lehman, Miller, and Moore. ROA.29-39 ¶¶118–171. Appellants moved to dismiss under Rule 12(b)(6), asserting qualified immunity. ROA.167, 170.

The district court denied the motion. ROA.244–259. The court held that Plaintiffs sufficiently alleged that Mr. Riggins had a serious medical need and that Appellants were deliberately indifferent to it. ROA.250-252. The court further held that Plaintiffs alleged violation of clearly established law under *Thompson* and *Dyer*. ROA.252-256. Appellants timely appealed. ROA.260.

## <u>SUMMARY OF THE ARGUMENT</u>

The district court should be affirmed.

Appellants' argument depends on minimizing the Complaint. They portray this case as one involving mere alcohol withdrawal, non-specific symptoms, and reasonable monitoring. That is not what Plaintiffs pleaded. Plaintiffs alleged that Mr. Riggins was placed in detox observation, that jail staff knew he was

withdrawing from alcohol, that he was shaking badly, that inmates believed he was having seizures and begged for help, that Moore knew he had twice soiled himself despite no history of incontinence, that Lehman and Miller encountered him shortly before his death when he could only mumble, and that Garcia, Lehman, and Miller were among the booking area jailers aware he was detoxing, having seizures, and suffering incontinence. ROA.20-26 ¶¶42–98. Plaintiffs further alleged that, despite this knowledge, Appellants did not obtain medical care until Mr. Riggins was unresponsive. ROA.23 ¶68; ROA.25 ¶89.

Those allegations plausibly state deliberate indifference. Delirium tremens and severe withdrawal are serious medical needs. A jury may infer subjective knowledge from obvious symptoms. And jailers cannot discharge their constitutional duty by merely "watching" a detainee deteriorate in an observation cell without summoning professional medical care.

The law was clearly established. In *Fielder*, this Court held that ignoring a detainee suffering delirium tremens could support deliberate-indifference liability. *United States v. Montano*, 590 F.2d 108, 108 (5th Cir. 1979). In *Thompson*, this Court held that delirium tremens is a serious medical need and that a jailer was not entitled to qualified immunity where she failed to summon professional medical help for a detainee suffering alcohol withdrawal and delirium tremens. 245 F.3d at 463-64. In *Montano*, this Court denied qualified immunity to officers who failed to obtain

care for a detainee suffering severe withdrawal symptoms, including seizures, inability to eat, inability to move, and incontinence. *Montano v. Orange County*, 842 F.3d 865, 869–72, 878–79 (5th Cir. 2016). And in *Dyer*, this Court held that *Thompson* clearly established that officials violate the Constitution when, despite awareness of a detainee's serious condition, they fail to secure medical help. 964 F.3d at 383–84.

Appellants' principal authority, *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809 (5th Cir. July 13, 2021), does not control this appeal. *Rombach* is unpublished, cannot overrule *Thompson*, and involved materially different facts. *Rombach* did not involve a pleaded death from complications of chronic alcoholism after jailers allegedly knew the detainee was detoxing, having seizures, suffering incontinence, not eating, not moving normally, and deteriorating in an observation cell. *Rombach* also emphasized the absence of severe symptoms such as hallucinations, obvious seizures, and self-inflicted injuries. *Id*. at *19-20. Here, Plaintiffs specifically pleaded seizures, confusion, incontinence, inability to eat, inability to move normally, and bedsores. ROA.21–21 ¶¶49–52, 64–80, 86–89, 98.

At this stage, Plaintiffs do not have to prove the case. They must plead facts which, accepted as true, plausibly overcome qualified immunity. They have done so. The order denying qualified immunity should be affirmed.

## ARGUMENT

### I. Standard of review.

This Court reviews de novo the denial of a Rule 12(b)(6) motion asserting qualified immunity. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). At the pleading stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to Plaintiffs. *Id.* The Court does not weigh evidence, resolve factual disputes, or accept Appellants' contrary characterization of the facts.

Qualified immunity has two prongs: whether the plaintiff pleaded a violation of a constitutional right, and whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In this Rule 12(b)(6) appeal, the question is not whether Plaintiffs can ultimately prove deliberate indifference. The question is whether Plaintiffs alleged facts that, if true, show Appellants violated clearly established law. They did.

### II. Plaintiffs plausibly alleged that Appellants violated Mr. Riggins's Fourteenth Amendment rights.

Pretrial detainees have a Fourteenth Amendment right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur County, Texas,* 245 F.3d 447, 457 (5th Cir. 2001); *Dyer v. Houston,* 964 F.3d 374, 380 (5th Cir. 2020). A serious medical need is one for which treatment has been recommended or one so apparent that even laypersons

would recognize care is required. *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).

To plead deliberate indifference, Plaintiffs must allege that Appellants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that Appellants actually drew that inference. *Dyer*, 964 F.3d at 380; *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001). Actual knowledge may be inferred from circumstantial evidence, and a factfinder may infer knowledge from the obviousness of the risk. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiffs satisfied that standard.

A. <u>The Complaint alleges an objectively serious medical need.</u>

Plaintiffs alleged that Mr. Riggins was a severe alcoholic, that he began experiencing major alcohol withdrawals after incarceration, and that his withdrawal progressed into delirium tremens. ROA.21-22 ¶¶50–60. Plaintiffs alleged seizures, confusion, severe shaking, incontinence, failure to eat, failure to move normally, bedsores, emaciation, and death. ROA.21–26 ¶¶49–52, 55–68, 73–80, 85–98.

Those allegations describe an objectively serious medical need. *Thompson* expressly recognized that delirium tremens is a serious medical need. 245 F.3d at 457. *Fielder* involved delirium tremens and held there was a "vast difference" between an unsuccessful attempt to care for a prisoner and a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in

desperate need of help." *Fielder v. Bosshard*, 590 F.2d 105, 108 (5th Cir. 1979). *Montano* involved severe withdrawal symptoms—including seizures, vomiting, inability to eat, inability to move, and incontinence—and denied qualified immunity. 842 F.3d at 869-72, 878-79.

Appellants frame the symptoms as "minor," "possible," or insufficiently obvious. But Plaintiffs did not allege only that Mr. Riggins drank alcohol or might withdraw. Plaintiffs alleged he was placed in detox observation, was shaking badly, was having seizures, soiled himself twice, could only mumble, was not eating, was not moving normally, had bedsores, and died from complications of chronic alcoholism. ROA.20-26 ¶¶42–98. At the pleading stage, those facts are more than enough to allege a serious medical need.

B. Plaintiffs plausibly alleged Appellants' subjective knowledge.

Appellants argue that Plaintiffs failed to allege individualized knowledge. That argument ignores the Complaint's specific allegations.

*1. Moore.*

The Complaint alleges that on June 4, 2023, Moore spoke with Mrs. Riggins and told her that Mr. Riggins had used the restroom in his pants twice that day. ROA.23 ¶64. Moore asked about Mr. Riggins's incontinence. ROA.23 ¶64. Mrs. Riggins told Moore that Mr. Riggins had never done that before and did not have a history of incontinence. ROA.23 ¶65. Plaintiffs alleged that Moore knew

Mr. Riggins was in the detox observation cell and that, in addition to detoxing from alcohol, he was now using the restroom on himself. ROA.23 ¶67. Plaintiffs further alleged that Moore failed to provide medical care or take steps to have care provided. ROA.23 ¶68.

Those are individualized allegations. Moore allegedly knew Mr. Riggins was detoxing and knew he had become newly incontinent. ROA.23 ¶¶64–68. In the context of known alcohol withdrawal, new incontinence was not a trivial fact. It was a red flag of serious deterioration, especially when considered with the Complaint's allegations that jail staff already knew he was shaking badly, detoxing, and experiencing delirium tremens symptoms. ROA.21–23 ¶¶50–68.

*2. Lehman.*

The Complaint alleges that on June 5, 2023, Lehman was assigned to first-floor duties and first-floor scans and was responsible for observing Mr. Riggins. ROA.23 ¶¶69–70. At approximately 3:50 a.m., Lehman observed Mr. Riggins remove his orange inmate jumper in holding cell 3, likely due to using the restroom on himself again. ROA.23 ¶71. At approximately 4:57 a.m., Lehman delivered breakfast. ROA.24 ¶¶73–74. Lehman told Mr. Riggins that breakfast was there, and Mr. Riggins only mumbled. ROA.24 ¶75. Lehman then had Miller close the door. ROA.24¶76.

The Complaint further alleges Mr. Riggins had not been eating while incarcerated and experiencing alcohol withdrawal and delirium tremens. ROA.24 ¶77. His autopsy showed an essentially empty stomach and the Texas Ranger described Mr. Riggins as "emaciated and had what appeared to be bedsores on his back." ROA.24 ¶¶78-79. At 5:34 a.m., Gentry asked booking officers what was wrong with Mr. Riggins and was told he was "detoxing and having seizures." ROA.25 ¶¶85–86. Plaintiffs specifically alleged that Lehman was among the booking area jailers aware that Mr. Riggins was detoxing from alcohol and experiencing delirium tremens by way of seizure and incontinence. ROA.25 ¶88. Plaintiffs alleged Lehman did not provide medical care or take steps to have care provided. ROA.25 ¶89.

Those allegations plausibly allege subjective knowledge. Lehman allegedly interacted with Mr. Riggins shortly before death, observed that he could only mumble, was in the booking area when jailers knew Mr. Riggins was detoxing and having seizures, and failed to obtain care. ROA.23–25 ¶¶69–89.

*3. Miller.*

The Complaint alleges that Miller opened and closed the holding cell door for Lehman's breakfast delivery to Mr. Riggins at approximately 4:57 a.m. ROA.24 ¶¶73–76. At that time, Mr. Riggins only mumbled in response. ROA.24 ¶75. Plaintiffs then alleged that the booking area jailers aware of Mr. Riggins's detoxing,

seizures, and incontinence included Miller. ROA.25 ¶88. Plaintiffs alleged Miller failed to provide medical care or take steps to have care provided. ROA.25 ¶89.

At Rule 12(b)(6), Plaintiffs were not required to attach scan logs or prove precisely what Miller saw at every minute. They alleged Miller personally participated in the cell door interaction shortly before Mr. Riggins was found unresponsive and that Miller was among the booking area jailers aware of the detoxing, seizures, and incontinence. ROA.24-25 ¶¶73–89. That is enough to plausibly plead individualized knowledge.

*4. Garcia.*

The Complaint alleges that, at 5:34 a.m., Gentry asked booking officers what was wrong with Mr. Riggins and was told he was detoxing and having seizures. ROA.25 ¶¶85–86. Plaintiffs alleged that Garcia was among the booking area jailers aware that Mr. Riggins was detoxing from alcohol and experiencing delirium tremens by way of seizure and incontinence. ROA.25 ¶88. Plaintiffs alleged Garcia failed to provide medical care or take steps to have medical care provided. ROA.25 ¶89.

At 5:35 a.m., Gentry noticed Mr. Riggins's fingers and told Garcia to get medical "now." ROA.26 ¶91. Appellants may argue this shows Garcia acted when directed. But Plaintiffs' claim is not based only on the final moment when Mr. Riggins was already unresponsive or near death. Plaintiffs allege Garcia already

knew Mr. Riggins was detoxing, having seizures, and suffering incontinence, and failed to obtain medical care before Gentry intervened. ROA.25 ¶¶85–89. The fact that medical care was summoned only after Gentry noticed the emergency does not erase Garcia's alleged earlier deliberate indifference.

C. Appellants' "collective knowledge" argument fails at the pleading stage.

Appellants repeatedly argue that Plaintiffs improperly rely on collective knowledge. That misstates the Complaint.

Plaintiffs alleged particular facts as to Moore: he personally spoke to Mrs. Riggins, knew Mr. Riggins had twice soiled himself, knew that was abnormal, knew Mr. Riggins was in detox observation, and did not obtain care. ROA.23 ¶¶64–68.

Plaintiffs alleged particular facts as to Lehman and Miller: they were involved in the breakfast delivery shortly before death, encountered Mr. Riggins when he only mumbled, and were among the booking area jailers aware he was detoxing, having seizures, and suffering incontinence. ROA.23-25 ¶¶69–89.

Plaintiffs alleged particular facts as to Garcia: he was among the booking area jailers aware of the detoxing, seizures, and incontinence, failed to obtain care, and was later specifically told by Gentry to get medical "now." ROA.25-26 ¶¶85–91.

Those allegations do not depend on abstract collective knowledge. They allege that each Appellant had knowledge of facts showing a substantial risk of serious harm.

D. Appellants' "monitoring" argument does not defeat deliberate indifference.

Appellants repeatedly emphasize that Mr. Riggins was placed in an observation cell or monitored. But observation is not medical treatment. Plaintiffs allege Appellants watched a serious medical need unfold but failed to obtain medical care. ROA.23 ¶68; ROA.25 ¶89.

*Thompson* forecloses Appellants' argument. There, the detainee was placed in a detox cell and observed. 245 F.3d at 453–54. But the Fifth Circuit still held that the jailer was not entitled to qualified immunity because the constitutional violation was not the absence of observation; it was the failure to summon professional medical assistance in the face of obvious serious withdrawal symptoms. *Id.* at 63-64.

The same is true here. Plaintiffs allege Mr. Riggins was not merely being monitored for ordinary intoxication. He was detoxing from alcohol, shaking badly, having seizures, soiling himself, not eating, not moving normally, developing bedsores, and deteriorating until death. ROA.20–26 ¶¶42–98. Continued observation without medical care plausibly constitutes deliberate indifference.

E. Appellants' "he did not ask for help" argument fails.

Appellants also argue that Mr. Riggins did not personally ask for help. That is legally and factually insufficient.

Factually, Plaintiffs alleged that other inmates pounded on the glass and screamed that Mr. Riggins needed help because they thought he was having a seizure. ROA.21 ¶51. Plaintiffs alleged inmates begged for help. ROA.27 ¶¶104–105. Plaintiffs alleged Mr. Riggins was confused, shaking badly, having seizures, incontinent, and only mumbling. ROA.21-26 ¶¶49–52, 56, 64–68, 75, 86–89. A detainee suffering delirium tremens or severe withdrawal may not be capable of making a coherent request for help.

Legally, *Thompson* rejects any rule requiring a detainee to request medical care before jailers must act. In *Thompson*, the detainee refused treatment in writing, yet the Fifth Circuit held that the jailer was not absolved of her constitutional duty to summon professional medical assistance. 245 F.3d at 452–54, 464. If a written refusal did not absolve the jailer in *Thompson,* Mr. Riggins's failure or inability to request help cannot defeat Plaintiffs' claim here.

## III. The law was clearly established.

The law was clearly established that Defendants Garcia, Lehman, Miller, and Moore would violate the constitution by failing to provide medical care or attention to Mr. Riggins when they were aware he was being monitored in an observation cell

due to detoxing from alcohol, having seizures, using the restroom in his pants, not eating, and not moving. *Thompson*, 245 F.3d at 463-64; *Montano*, 842 F.3d 865; *Fielder*, 590 F.2d at 108.

In *Montano v. Orange Cnty., Tex., supra*, the Fifth Circuit found a constitutional violation for inadequate medical care in what is an eerily similar case. 842 F.3d at 865. In that case, Mr. Montano was arrested for public intoxication. *Id*. at 870. Although Mr. Montano had been arrested for public intoxication, the arresting officer reported to the corrections officer working the book-in desk that she suspected he was under the influence of bath salts, even though the arresting officer's suspicions were never confirmed. *Id*. Mr. Montano was placed in an observation cell because he was determined to be incoherent and, therefore, unable to complete the booking process. *Id*. No physician visited the jail during Mr. Montano's approximate four-and-one-half-days' detention. *Id*. at 870-871. Attention to Mr. Montano was minimal at best. *Id*. at 871. Mr. Montano's vital signs were checked once at most; and, even in that instance, his temperature was not taken. *Id*. **The jail staff "basically ... watched [Mr. Montano] and his condition deteriorate until the point where he died."** *Id*. at 872.

The Fifth Circuit found that the record demonstrated the county denied Mr. Montano medical care with the expectation that he would heal himself. *Id*. at 878. The Fifth Circuit went on to explain that these denials were not the result of negligent

staff—as the county maintained, seeking to avoid liability—but the result of the county's well-known and uniformly-practiced *de facto* policy. *Id*. at 879. The county never addressed why detainees were expected to heal themselves, particularly when the assumed drug influence was never established. *Id*. In short, there was evidence that the county's policy was the moving force for Mr. Montano's inadequate medical care. *Id*.

The Fifth Circuit has affirmed a jury's findings in a similar case that the defendant officers were not merely negligent, and instead their conduct rose to the level of a constitutional violation. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). On July 2, 1976, Jimmie Fielder was arrested by officers Walker and Chandler for failure to make child support payments. *Id. at* 107. They were told that Fielder was sick and under medication. *Id*. He was taken to the Williamson County Jail, where Robert Champion, the jailer, was informed by Fielder's mother that Fielder was sick, that he had a virus and high blood pressure, that he had not eaten, and that he needed attention. *Id*. At noon on July 4, 1976, Fielder's behavior became bizarre. *Id*. at 108. At 9:00 P.M. on July 4, Champion called the sheriff's office to inform them of Fielder's condition, and then Deputies Chandler and Walker went to the jail where the three men escorted Fielder to a cell on the second floor. *Id*. Fielder was irrational, afraid, mumbling incoherently, and waving his arms. *Id*. The jailer and the two deputies maintained that he was faking, and Deputy Walker later stated in his report

to Sheriff Bosshard that Fielder was just "putting on." *Id*. Champion checked on Fielder two more times that day, but Fielder showed no improvement. *Id*. At 7:00 a.m. on July 5, Champion looked into Fielder's cell and saw Fielder was lying quiet on the bare floor. *Id*. Without first checking on Fielder, Champion reported to Bosshard, who advised him to do so. *Id*. Jimmie Fielder was dead. *Id*.

The Fifth Circuit affirmed the jury's finding that the jailers had "crossed the line between misfeasance and conscious cruelty." *Id*. The Fifth Circuit went on to proclaim that,

> [t]here is a vast difference between an earnest, albeit unsuccessful attempt to care for a prisoner and a cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help.

*Id*.

The Fifth Circuit has faced similar facts with an inmate who suffered a seizure after not receiving medical care. *Thompson*, 245 F.3d at 447. In *Thompson*, the plaintiff was arrested for DWI. *Id*. at 452. In this case, Mr. Riggins was arrested for DWI. In *Thompson*, the plaintiff began experiencing symptoms of delirium tremens (DTs) as a result of withdrawing from alcohol. *Thompson*, 245 F.3d at 452. In this case, Mr. Riggins was experiencing symptoms of delirium tremens as a result of withdrawing from alcohol, including being placed in detox observation, shaking badly, having seizures, soiled himself twice, could only mumble, not eating, not moving normally, had bedsores, and died from complications of chronic alcoholism.

ROA.20-26 ¶¶42–98. In *Thompson*, no medical treatment was provided despite an initial medical screening at a previous jail where the plaintiff refused to go to the hospital. *Thompson*, 245 F.3d at 453. In this case, no medical treatment was provided to Mr. Riggins despite him being placed in detox observation, shaking badly, having seizures, soiled himself twice, could only mumble, not eating, not moving normally, had bedsores, and died from complications of chronic alcoholism. ROA.20-26 ¶¶42–98. The Fifth Circuit explained that, "we do not believe that Thompson's (the plaintiff) refusal of medical care in Marion County could be reasonably understood to absolve Whorton (the defendant) of her constitutional duty to summon professional medical assistance" when it was needed later in the jail. *Thompson*, 245 F.3d at 464. This reasoning applies in this case – Defendants were not absolved of their constitutional duty to summon professional medical assistance simply because Mr. Riggins did not request it. *Id*. Thus, *Thompson* clearly establishes that Defendants' refusal to summon medical treatment for Mr. Riggins violated his constitutional rights. *Id*.

Further, the Fifth Circuit has explained that *Thompson* clearly established that officers violated someone's constitutional rights when they did nothing to secure medical help despite being aware of the detainee's condition. *Dyer*, 964 F.3d at 384 (*see Jones v. Am. Alternative Ins. Corp.*, No. CV 21-690, 2022 WL 989346, at *8 (W.D. La. Mar. 31, 2022); *Addington v. Bayou Dorcheat Corr. Ctr.*, No. CV 18-

1116, 2022 WL 989343, at *9 (W.D. La. Mar. 31, 2022) (citing to *Dyer* with a parenthetical stating, "citing pre-2018 cases for clearly established law). In *Dyer*, this Court expressly relied on *Thompson* to hold that clearly established law prohibited officials from doing nothing to secure medical help despite awareness of a detainee's serious condition. 964 F.3d at 383–84. *Dyer* acknowledged that deliberate indifference cases are fact dependent, but concluded that *Thompson* defined clearly established law in sufficient detail. *Id*. Here, despite the Defendants being aware of Mr. Riggins' deteriorating medical severe medical issues, none of the Defendants alerted any medical personnel.

The facts of this case are like *Thompson*, *Fielder*, and *Montano*, as Mr. Riggins was known to be detoxing from alcohol so he was moved into an observation tank where he did not receive medical attention despite having seizures, using the restroom on himself, not eating, and not moving until he died. ROA.20-26 ¶¶42–98. *Thompson*, *Fielder*, and *Montano* clearly established the law in this case putting these Individual Defendants on notice that their failure to provide medical care to an obviously in need person in their custody would be a constitutional violation. *Thompson*, 245 F.3d at 457; *Montano*, 842 F.3d 865; *Fielder*, 590 F.2d at 108; *Dyer*, 964 F.3d at 383-84.

Defendants cite the unpublished opinion in *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809 (5th Cir. July 13, 2021), for the proposition that Mr.

Riggins' symptoms were not severe enough to warrant medical attention. However, in *Rombach*, the Fifth Circuit noted that "it is also unrefuted that when officers questioned Rombach about his withdrawal symptoms while he was held in the padded cell, he told them that "he was fine" and he "requested to go back to his cell." *Id*. at *6. Further, "Rombach's autopsy attributed his cause of death to a perforated stomach ulcer. Notably, it is undisputed that neither Rombach, nor his family, nor, critically, the jail personnel were aware of this condition." *Id*. However, in this case, Plaintiffs pleaded that "The Autopsy Report lists the cause of death as "Complications of chronic alcoholism" and the postmortem toxicology was negative for drugs or alcohol." ROA.26 ¶98. The cause of death in this case is directly attributable to the Defendants' failure to provide medical care for his known and obvious withdrawal symptoms and delirium tremens. ROA.27 ¶107. Mr. Riggins was moved to an observation cell because he was detoxing and having seizures. ROA.21-22, 25, ¶¶47-54, 85-86. The *Rombach* panel stated that the record lacked more severe symptoms such as hallucinating, obvious seizures, or self-inflicted injuries. 2021 WL 2944809, at *19-20. Here, Plaintiffs pleaded seizures, confusion, severe shaking, incontinence, failure to eat, inability to move normally, bedsores, and death from complications of chronic alcoholism. ROA.21–26, ¶¶49–52, 56, 64–80, 86–98. Appellants cannot use *Rombach's* absence of seizures to defeat a

Complaint that expressly alleges seizures. This case is *Thompson*, or *Fielder*, or *Mantano*. It is not *Rombach*.

Additionally, the Supreme Court has explained that in an "obvious case," the unlawfulness of conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). "[I]n an obvious case, general standards can 'clearly establish' the answer, even without a body of relevant case law." *Crane v. City of Arlington*, 50 F.4th 453, 467 (5th Cir. 2022); *See Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) ("[I]in an obvious case, general standards can 'clearly establish' the answer, even without a body of relevant case law." (cleaned up); quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004))). General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," *Hope*, 536 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

It is obvious that failing to provide Mr. Riggins medical care would violate the constitution, when Mr. Riggins was known to be detoxing from alcohol so he was moved into an observation tank where he did not receive medical attention despite having seizures, using the restroom on himself, not eating, and not moving

until he died. ROA.20-26 ¶¶42–98; *Thompson*, 245 F.3d at 457; *Montano*, 842 F.3d 865; *Fielder*, 590 F.2d at 108; *Dyer*, 964 F.3d at 383-84. Thus, this is an obvious case which is clearly established under *Hope*. *Hope*, 536 U.S. at 738.

Appellants also argue that not all reasonable jailers in their position would believe their actions violated Mr. Riggins's rights. But the relevant facts are Plaintiffs' pleaded facts, not Appellants' minimized version.

On Plaintiffs' allegations, reasonable jailers knew Mr. Riggins was detoxing from alcohol, knew he was in an observation cell for detox, knew he was shaking badly, knew inmates believed he was having seizures and begged for help, knew he had become incontinent, knew he was not eating, knew he could only mumble, and knew he was deteriorating. ROA.20-26 ¶¶42–98. A reasonable jailer in June 2023 would have known that failing to obtain medical care under those circumstances violated the Constitution.

This conclusion does not require defining the right at a high level of generality. The right is not merely "the right to medical care." It is the right of a pretrial detainee not to have jail officials ignore obvious severe withdrawal symptoms – including seizures, failure to eat, and incontinence – by leaving him in an observation cell without summoning professional medical care. *Thompson*, *Fielder*, *Montano*, and *Dyer* clearly established that right.

Accordingly, Defendants violated clearly established law and as the district court found, they are not entitled to qualified immunity.

## IV. Appellants' remaining arguments fail.

### A. The initial booking denial of substance dependency does not defeat later knowledge.

Appellants emphasize that Mr. Riggins allegedly denied substance dependency at intake. But Plaintiffs alleged that jail staff later learned much more. They learned he was detoxing. ROA.21 ¶¶47, 50. Grisolia learned from Mrs. Riggins that if Mr. Riggins was awake he was drinking whiskey. ROA.22 ¶57. Grisolia wrote "Severe Alcoholic" on his booking sheet. ROA.22 ¶62. Moore learned that Mr. Riggins had twice soiled himself despite no history of incontinence. ROA.23 ¶¶64–65. Booking area jailers knew he was detoxing and having seizures. ROA.25 ¶¶85–89.

Whatever Mr. Riggins said at intake does not erase Appellants' later knowledge. Qualified immunity cannot be resolved by selecting one early fact while disregarding the later pleaded facts showing obvious deterioration.

### B. The fact that medical care was summoned after Mr. Riggins became unresponsive does not defeat liability for the prior failure to obtain care.

Appellants argue that jail staff immediately performed life saving measures once Mr. Riggins was found unresponsive. Plaintiffs do not dispute that the

Complaint alleges CPR and EMS after the final emergency. ROA.26 ¶¶91–96. But that is not the alleged constitutional violation. Plaintiffs allege Appellants ignored his serious medical needs before that point – while he was detoxing, having seizures, incontinent, not eating, not moving normally, and deteriorating. ROA.20-26 ¶¶42–89.

A jailer cannot avoid liability by waiting until a detainee is unresponsive before summoning medical care. *Thompson* and *Dyer* clearly establish that the duty arises when officials are aware of serious symptoms requiring medical attention, not only after death is imminent.

C. Plaintiffs' allegations are not negligence allegations.

Appellants repeatedly call this negligence. The Complaint alleges more. Plaintiffs alleged that Appellants knew Mr. Riggins was detoxing and experiencing serious symptoms and still failed to obtain medical care. ROA.23 ¶68; ROA.25 ¶89. Deliberate indifference includes refusing to treat, ignoring complaints, intentionally treating incorrectly, or conduct clearly evincing wanton disregard for serious medical needs. *Domino*, 239 F.3d at 756. Plaintiffs alleged Appellants ignored obvious medical needs and did not summon care until Mr. Riggins was unresponsive. That plausibly alleges deliberate indifference. *Thompson*, 245 F.3d at 457; *Montano*, 842 F.3d 865; *Fielder*, 590 F.2d at 108; *Dyer*, 964 F.3d at 383-84.

## CONCLUSION

The district court correctly denied Appellants' Rule 12(b)(6) motion. Plaintiffs alleged that Garcia, Lehman, Miller, and Moore knew Mr. Riggins was suffering serious alcohol withdrawal symptoms—including seizures and incontinence—and failed to obtain medical care while he deteriorated in a detox observation cell until death. Those allegations plausibly state a Fourteenth Amendment violation. And *Thompson*, *Fielder*, *Montano*, and *Dyer* clearly established that jail officials may not ignore obvious severe withdrawal symptoms and fail to summon professional medical care.

## PRAYER AND CONCLUSION

Appellees ask this Court to AFFIRM the district court and to remand this case so that it may proceed to trial. Appellees ask for any other relief to which they may be justly entitled.

Respectfully Submitted,

/s/ James P. Roberts

James P. Roberts
SBOT: 24105721
**Palmer Perlstein**
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: (214) 2987-4100
Email: james@palmerperlstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, that an exact copy of Plaintiffs-Appellees' Brief was served via ECF to counsel for the Defendants-Appellants. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) because:

- This brief contains 7,268 words with no exclusions under Rule 32(f) accounted for;

This brief also complies with the typeface requirements of Rule 32(a)(5) and the type requirements of Rule 32(a)(6) because:

- This brief has been prepared in Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text and 12-point font for the footnotes.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**